UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | | |
|---|---|---|
| BILLY TESTER, | ) | |
| | ) | |
| Plaintiff, | ) | 2:19-CV-00104-DCLC-CRW |
| | ) | |
| vs. | ) | |
| | ) | |
| WAL-MART STORES, EAST, LP, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court to address Defendant's Motion for Summary Judgment [Doc. 22]. Plaintiff filed a response [Doc. 26] and Defendant replied [Doc. 28]. This matter is now ripe for resolution. For the reasons that follow, Defendant's Motion for Summary Judgment [Doc. 22] is **GRANTED**.

**I.  BACKGROUND**

On July 4, 2018, Plaintiff parked his car next to a grassy median at the Walmart Store #690 in Elizabethton, Tennessee [Doc. 27, p. 1]. After exiting his car, Plaintiff stepped from the asphalt of the parking lot, over the curb, and onto the median [*Id*. at p. 2]. Plaintiff walked across the median toward the entrance of the store and stopped in front of the curb on the opposite side of the median [*Id*. at p. 3]. The surveillance video from the store at the time of the incident shows a van approaching as Plaintiff is about to leave the median and walk across the parking lot to the entrance of the store [Doc. 22-3].[1] Plaintiff testified that as he was standing on the median, he saw the van and the driver of the van motioned for him to walk [Doc. 26, p. 2].

---

[1] Where video evidence is present, the Court shall view the facts in the light depicted by the videotape. *See Scott v. Harris*, 550 U.S. 372, 381 (2007); *Rudlaff v. Gillispie*, 791 F.3d 638, 639 (6th Cir. 2015).

1

As Plaintiff began to walk, he tripped over the curb of the median [Doc. 27, p. 4]. At the time of the incident, it was a "bright and sunny late summer afternoon" and "Plaintiff's vision was fine." [*Id*. at p. 2]. Plaintiff testified that he could have walked around the median and that he had walked over parking lot medians "a hundred times" and had "seen other people do it." [Doc. 22-1, p. 16]. Plaintiff also testified that he did not have any problems seeing the curb [*Id*. at p. 10]. When asked if he could have stepped over the curb, Plaintiff admitted that he "was too close to it" or could have raised his foot higher [*Id*. at p. 18]. Plaintiff contends that if the "grass had been higher" he would not have tripped [*Id*. at p. 19]. However, it is undisputed that the curb "was easy to see and concrete color as opposed to the black asphalt of the parking lot or the green grass of the median." [Doc. 27, p. 4].

Based on these facts, Plaintiff filed a complaint against Defendant in the Circuit Court for Carter County, and Defendant removed the action to this Court on June 21, 2019 [Doc. 1]. On June 11, 2020, Defendant filed the Motion for Summary Judgment that is currently before the Court asserting that it is entitled to summary judgment because (1) Plaintiff has presented no evidence of a dangerous condition and (2) comparative fault acts as a bar [Doc. 22, p. 1].

## II.  LEGAL STANDARD

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the Court must view the facts contained in the record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party bears the initial burden of demonstrating that no genuine issue of material facts exists. *Celotex Corp. v. Catrett*, 477 U.S.

317, 323 (1986). The burden then shifts to the nonmoving party to "come forward with significant probative evidence showing that a genuine issue exists for trial." *McKinley v. Bowlen*, 8 F. App'x 488, 491 (6th Cir. 2001). A mere scintilla of evidence is not enough; the Court must determine whether a fair-minded jury could return a verdict in favor of the nonmoving party based on the record. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-252 (1986). Generally, negligence actions are "not amenable to disposition on summary judgment," but "[s]ummary judgment is appropriate…if the facts together with the inferences to be drawn from the facts are so certain and uncontroverted that reasonable minds must agree." *Steele v. Primehealth Med. Ctr., P.C.*, No. W2015-00056-COA-R3-CV, 2015 WL 9311846, at *4 (Tenn. Ct. App. Dec. 22, 2015).

## III. ANALYSIS

Under Tennessee law,[2] a prima facie claim of negligence requires the plaintiff to show the following elements: "(1) a duty of care owed by defendant to plaintiff; (2) conduct below the applicable standard of care that amounts to a breach of that duty; (3) an injury or loss; (4) cause in fact; and (5) proximate, or legal, cause." *Giggers v. Memphis Hous. Auth.*, 277 S.W.3d 359, 364 (Tenn. 2009) (quoting *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995)). Duty is defined as "the legal obligation of a defendant to conform to a reasonable person's standard of care in order to protect against unreasonable risks of harm." *Id*. Although property owners are "required to exercise due care under all the circumstances…they are not insurers of the safety of their customers or the general public." *Steele*, 2015 WL 9311846, at *5.

Property owners have a duty to remove or warn against "any dangerous condition on the premises of which the property owner is actually aware or should be aware through exercise of

---

[2] Because this case is before the Court based on diversity of citizenship, the Court must apply the substantive law of the forum state. *Kepley v. Lanz*, 715 F.3d 969, 972 (6th Cir. 2013). Therefore, Tennessee law applies to the substantive issues in this matter.

3

reasonable diligence." *Parker v. Holiday Hosp. Franchising, Inc.*, 446 S.W.3d 341, 350 (Tenn. 2014) (citing *Eaton v. McLain*, 891 S.W.2d 587, 594 (Tenn. 1994)). A dangerous condition is present if "it is reasonably foreseeable that the condition could probably cause harm or injury and that a reasonably prudent property owner would not maintain the premises in such a state." *Stewart v. Seton Corp.*, No. M2007-00715-COA-R3-CV, 2008 WL 426458, at *4 (Tenn. Ct. App. Feb. 12, 2008) (citing *McCall*, 913 S.W.2d at 153). Thus, property owners do not have a duty to "remove or warn against conditions from which no unreasonable risk was to be anticipated…" *Rice v. Sabir*, 979 S.W.2d 305, 308–09 (Tenn. 1998).

Defendant asserts that Plaintiff has not met his burden of showing the existence of a dangerous condition that would give rise to a duty owed by Defendant [Doc. 23, p. 7]. In support, Defendant contends that a curb around a median is a common feature in parking lots and, in fact, Plaintiff testified that he had walked over parking lot medians "a hundred times" and that the curb in question was easily visible [*Id.*]. Ultimately, Defendant argues that Plaintiff's allegation that the curb constitutes a dangerous condition is based solely on the fact that he tripped on it [*Id.*]. In response, Plaintiff asserts that the gap between the grassy area of the median and the curb is a dangerous condition because the risk of harm presented by the gap is foreseeable [Doc. 26, p. 8]. Plaintiff cites to various unreported cases in which the courts considered a condition of a parking lot dangerous, thus, precluding summary judgment [*Id.* at p. 4–8]. However, each condition in the cases cited by Plaintiff are distinguishable from the condition in the instant matter.

In *Winkler*, the court held that an "abrupt change in elevation" on the side of a ramp that led from the parking lot to the sidewalk was a dangerous condition. *Winkler v. Pinnacle Properties I, LLC*, No. M2011-02616-COA-R3CV, 2012 WL 2989135, at *4 (Tenn. Ct. App. July 20, 2012). The plaintiff asserted that "there were inadequate visual clues to inform [the plaintiff] that a

4

substantial change of elevation was present which posed a tripping hazard." *Id*. at *1. Next, in *Wood*, the court considered a "lip" on the sidewalk, which was 1/2 to 3/4 of an inch higher than the parking lot, to be a dangerous condition. *Wood v. Wal-Mart Stores E., LP*, No. 3:11-1081, 2013 WL 3010698, at *1 (M.D. Tenn. June 18, 2013). In its analysis, the court contrasted the sidewalk to other non-dangerous conditions, such as a "standard-sized curb." *Id*. at *2. The court even stated that "the transition in question (short as it was) might not even properly be characterized as a 'curb' as that term is generally used in relation to a sidewalk…" *Id*. Thus, the slight elevation between the asphalt and the sidewalk made it foreseeable that a customer could trip. *Id*. at *3.

Likewise, the court in *Cary* held that a slight elevation made it reasonably foreseeable that a pedestrian would trip and fall over a speed bump that was approximately 3/4 of an inch at its highest point. *Cary v. The Kroger Company*, No. 1:09-0064, 2010 WL 3420351, at *4 (M.D. Tenn. Aug. 26, 2010). Finally, in *Sawyer,* the court held that a drop-off of approximately two feet between two parking lots was a dangerous condition. *Sawyer v. First Tennessee Bank*, No. 02A01-9704-CV-00079, 1998 WL 199645, at *3 (Tenn. Ct. App. Apr. 27, 1998). From the upper lot, the different levels were obscured, and it was not apparent that there was a difference in elevation between the two lots. *Id*.

Comparing the characteristics of the dangerous conditions in those cases to the curb in this case, the Court finds there is not sufficient evidence of the existence of a dangerous condition that would give rise to a duty on behalf of Defendant. First, there were adequate visual clues to inform Plaintiff that a change in elevation was present. In fact, it is undisputed that the curb was "easy to see." [Doc. 27, p. 4]. Second, the elevation between the curb and the grassy area was neither slight nor abrupt. The gap, which plaintiff asserts is approximately five inches, is much higher than the 1/2 to 3/4 of an inch slight elevation in *Wood* and *Cary* and lower than the two-foot elevation in

5

*Sawyer*. Plaintiff avers that if a 1/2 to 3/4 of an inch elevation is dangerous, then a five-inch elevation is certainly dangerous [Doc. 26, p. 9]. However, the slight, rather than standard, elevation of the conditions in *Wood* and *Cary* is precisely what created the danger; thus, the five-inch gap weighs in favor of a finding that the curb is not dangerous. Finally, the different levels were not obscured as they were in *Sawyer* because it is undisputed that Plaintiff had to step over an identical curb to enter the grassy median and, again, the curb was easily visible [Doc. 27, p. 4]. In fact, Plaintiff admits that he "just did not raise his foot high enough." [*Id*.].

Defendant has presented sufficient evidence that it did not owe Plaintiff a duty to warn of or remove a condition that caused an unreasonable risk, and Plaintiff has not come forward with probative evidence showing that a genuine issue exists for trial. *See Minias v. Historic Hotels of Nashville, L.L.C.*, No. 3:07-0623, 2008 WL 2437734, at *5 (M.D. Tenn. June 13, 2008) (finding no breach of duty where "the curb at issue is similar to curbs found in parking garages and around sidewalks"). A fair-minded jury could not return a verdict in favor of Plaintiff due to the absence of a duty—an essential element of Plaintiff's negligence claim. Therefore, there is no genuine issue as to any material fact and Defendant is entitled to judgment as a matter of law.

**IV. CONCLUSION**

Accordingly, for the reasons stated herein, Defendant's Motion for Summary Judgment [Doc. 22] is **GRANTED**. A separate judgment shall enter.

SO ORDERED:

s/ Clifton L. Corker
United States District Judge